**ESSLINGER'S, Inc., v. UNITED STATES.**

Nos. 44309, 44628.

Court of Claims.

March 3, 1941.

established that the determination of the Commissioner of Internal Revenue with respect to its excise tax liability for the periods involved was erroneous, or that it has overpaid the excise tax due by it because of any established inaccuracy in the meters used in measuring the quantity of beer and the ale produced for the purpose of computing the excise tax imposed by and payable under the provisions of the revenue statutes above mentioned. Section 608 of the Revenue Act of 1918, 40 Stat. 1057, as amended by section 9 of the Liquor Taxing Act of 1934, 48 Stat. 313, provided as follows:

"That there shall be levied and collected on all beer, lager beer, ale, porter, and other similar fermented liquor containing one-half of one per centum, or more, of alcohol, brewed or manufactured and hereafter sold, or removed for consumption or sale, within the United States, by whatever name such liquors may be called, in lieu of the internal-revenue taxes now imposed thereon by law, a tax of $5.00 for every barrel containing not more than thirty-one gallons, and at a like rate for any other quantity or for the fractional parts of a barrel authorized * * *."

Stanley Worth, of Washington, D. C., for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and GREEN, Judges.

LITTLETON, Judge, delivered the opinion of the court.

The essential facts established by the record and material to the issue presented in these cases are set forth in the findings. The question presented concerns the correctness of the method employed by the Treasury Department in determining the measure of plaintiff's liability for the excise tax imposed by section 608 of the Revenue Act of 1918 as amended by section 9 of the Liquor Taxing Act of 1934, and, in the last analysis, the question is whether plaintiff has proven that it overpaid the excise tax due by it on beer which it manufactured in the amounts claimed, or in any determinable amount.

We are of opinion upon the facts disclosed by the record that plaintiff has not

Section 607 of the Revenue Act of 1918, 40 Stat. 1109, supra, provided as follows:

"That the Commissioner, with the approval of the Secretary, is hereby authorized to require at distilleries, breweries, rectifying houses, and wherever else in his judgment such action may be deemed advisable, the installation of meters, tanks, pipes, or any other apparatus for the purpose of protecting the revenue, and such meters, tanks, and pipes and all necessary labor incident thereto shall be at the expense of the person on whose premises the installation is required. Any such person refusing or neglecting to install such apparatus when so required by the Commissioner shall not be permitted to conduct business on such premises."

Pursuant to section 607, the Commissioner of Internal Revenue promulgated Treasury Regulations 18, paragraphs (a) to (g), inclusive, and 21 and 23, relating to the installation, use, and inspection of meters for the purpose of measuring beer manufactured and withdrawn for purposes of the tax, par. 12 (a) of this regulation being as follows:

"Brewers shall be required to provide meters for the measurement of beer withdrawn for tax payment, which meters shall

be accessible to government officers at all reasonable hours during which the brewery is operating. Supervisors shall furnish brewers with a list of manufacturers whose meters conform to the prescribed specifications and have been approved."

Prior to the periods of the claims here involved in these cases two types of meters were approved by the Commissioner of Internal Revenue and the Secretary of the Treasury, and by contract between the brewer and the manufacturer, these meters were guaranteed for a period of one year within a tolerance of 0.4% of accuracy. Approved meters were installed and used by plaintiff in its brewery and these were, during the periods involved, constantly and regularly inspected in accordance with regulations. The excise tax paid, a portion of which is here sought to be recovered, was determined and computed by the Commissioner from information disclosed by these approved meters as to the number of barrels of beer produced by plaintiff during the periods involved. This is the only independent means by which the defendant might after the beer had been produced and removed, or may now check the amount of beer removed from breweries for the purpose of bottling for the trade. Prior to October 17, 1935, when the meters installed for use by plaintiff were approved, Government calibrated tanks, to each of which was attached a telegauge, were used for the purpose of measuring beer produced for purpose of the excise tax to be collected. This latter method was subject to so many variable factors that it was found to be unsatisfactory and was abandoned. After that time approved meters were used instead. Frequent tests were made of these meters by master meters calibrated and sealed by the U. S. Bureau of Standards, and such tests were regularly made of plaintiff's meters. When a meter was found to be registering the flow of beer within a tolerance of 0.4% of accuracy, either plus or minus, no correction or adjustment of such meter was made, but when the meter showed to be registering beyond such tolerance, either plus or minus, it was dismantled, cleaned, retested, and adjusted to under-register in favor of plaintiff within the degree of tolerance of 0.4 of 1%. The record shows that this procedure was followed not only with respect to plaintiff's operations but it was followed generally in the entire brewing industry. It was the usually recognized and approved method. Reports of the tests made of the meters were and are kept by the Alcohol Tax Unit of the Bureau of Internal Revenue. Upon the filing of a claim for refund, the Commissioner under the established and customary practice of his office, makes an investigation of the claim, which investigation is not necessarily confined to the period covered thereby, and to the extent the investigation supports the claim a refund is made. If the investigation made does not support the claim, or if such investigation discloses an additional tax due for a period covered by the investigation greater than the period covered by the claim, the refund claim is denied and the additional tax found to be due is assessed and collected. This procedure was followed in plaintiff's case, and inasmuch as an underpayment of tax was indicated for the period October 18, 1935, to June 20, 1938, of $2,261.30, the claims filed by plaintiff were denied and this additional tax was assessed and paid. In determining this underpayment for the period mentioned, the Commissioner ascertained the number of barrels of beer transferred from plaintiff's brewery to the bottling house on the basis of the meter tests described in the findings from the date of one meter test to the date of each succeeding meter test within the period, based upon the percentage of meter errors disclosed by these tests. The formula used in determining the amount of underpayment of tax is set forth in finding 15. By applying this method the Commissioner determined from the information available to him, and the information set forth in the regular reports required by the regulations, of meter inspectors, that for the periods involved herein the number of barrels of beer on which the tax had not been paid, based upon the percentage of meter errors, was 635.09, and that on the same basis 182.83 barrels had been over-tax paid, or a net total under-tax paid of 452.26 barrels, for which the additional tax of $2,261.30 was assessed.

Although the meter method of measuring beer for tax purposes may be subject to some criticism on the ground that it is not infallible and may not disclose in every case the exact number of barrels of beer that had passed through the meters at any given period, the record shows, and we have found as a fact, that the method used in plaintiff's plant, upon the basis of which the Commissioner made his determination, is generally accepted as fair throughout the

brewing industry and is the best devised over a period of time in the interest of accuracy in determining the amount of beer, by meter tests, for the purpose of measuring the amount of tax to be paid. The use of meters was specifically authorized by section 607 of the Revenue Act of 1918, supra. The record also shows, and we have found as a fact, that in deciding plaintiff's claim for refund and in determining and assessing the additional tax, the Commissioner of Internal Revenue made allowance for the entire period involved for any drifts or discrepancies in the meters as shown by the master-meter tests. While certain meter tests disclosed that plaintiff's meters were at times out of adjustment, this fact alone does not establish plaintiff's right to recover any determinable amount of tax paid in view of other facts established by the record and found, as above mentioned. Mangone Co. v. United States, 54 F.2d 168, 73 Ct.Cl. 239.

Plaintiff places emphasis upon the element of back surge of beer through the meters prior to the installation on December 4, 1936, of rest tanks between the meters and bottling houses. Subsequent to the installation of these tanks, any back surge would not affect the meters. Prior to December 1936, when the pumping machinery was stopped, there was observed under certain conditions some back surge which probably affected to some undetermined extent the amount of beer measured by the meters. The record establishes, however, and we have found as a fact, that plaintiff had, as a part of its equipment, a booster pump for the purpose of regulating and equalizing pressure between the bottling machine in the bottling house and the storage tank in the brewery from which the beer was pumped through the meters, but the efficient action of this booster pump was dependent upon the experience and care of the person operating the machinery, and this back surge of the beer was the result largely of inefficient operation of the pump when the bottling machine was stopped. The extent of the effect upon the meters of this back surge cannot be ascertained inasmuch as there are too many unknown factors present, such as the number of stops made in bottling operations, the different pressures at the pumps and tanks, and the length of the pipe between the pumps and tanks. If the amount of back surge had been ascertained by plaintiff, or was ascertainable on any reasonable basis, it seems clear that the Commissioner of Internal Revenue would not have refused to make a refund to plaintiff to that extent. As the record stands, any overpayment resulting from back surge of beer through the meters would have to be based on conjecture and speculation.

Plaintiff also claims that the amount of tax due by it on the beer produced could have been determined and measured by its production records, but the record before the court fails to contain sufficient evidence to show the reliability or accuracy of such production records. On the contrary, the facts show that plaintiff's production records during the period involved were based in part upon estimates and were otherwise inaccurate, and that there is no satisfactory evidence as to the number of cases of ale or beer bottled or as to the number of crowns, lids, or taxpaid barrels during the period involved in these suits (finding 20).

For the reasons stated, plaintiff is not entitled to recover and the petitions are dismissed. It is so ordered.